IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| TEDD HUTCHISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-5090-CV-SW-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his disability application. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff is a 66-year-old male with past relevant work as a bartender. He received disability benefits previously, but in February 1992 he was found to be no longer disabled. He applied for benefits again in 1993 and 1995, but did not pursue those applications past the administrative level. Also, in 1993 he began receiving VA benefits, and has not worked since that time.

Plaintiff's current application is under Title II of the Social Security Act. To be entitled to those benefits, he is required to show he was disabled before his date last insured (March 31, 1997).

The ALJ determined that, for the relevant time period, Plaintiff suffered from the following severe impairments: coronary artery disease with history of stent placement in June 1996; hypertension; history of cataract replacement in September 1996; degenerative disc disease; history of irritable bowel syndrome; dysthymia; and history of polysubstance addiction. The ALJ concluded that, between 1992 and 1997, Plaintiff

could return to work as a bartender and could perform other jobs that existed in significant numbers in the national economy. Plaintiff contends this decision is not supported by substantial evidence in the record as a whole.

## II. DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered. *Id.* If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed. *Id.*

### *(1) Treating Source Opinion*

On May 1, 2007, John Baurichter, DO, opined Plaintiff was moderately limited in certain areas of mental functioning related to concentration, social interaction, and the ability to adapt. Dr. Baurichter did not state he was opining as to Plaintiff's limitations during the relevant period (1992–1997). Because Dr. Baurichter's opinion was rendered over a decade after Plaintiff's date of last insured, the ALJ found it "shed no light" on Plaintiff's functioning during the relevant period.[1]

Plaintiff argues the ALJ "disregarded" Dr. Baurichter's opinion, but this is not accurate. The ALJ specifically stated she "considered" the opinion but declined to give it "great weight." The ALJ did not disregard the opinion.

Plaintiff also argues Dr. Baurichter's opinion "was consistent with the other medical evidence from the relevant time period." But even if true, this does not mean it

---

[1] The ALJ referred generally to "treating source opinions." The parties do not dispute that this reference included Dr. Baurichter's opinion.

gives any indication of Plaintiff's abilities during that time. Plaintiff contends otherwise, asserting the opinion "provides significant insight into [Plaintiff's] mental functional limitations prior to March 31, 1997," but the Court does not perceive how the opinion does – or could do – this. And even if it did, Dr. Baurichter's opinion that Plaintiff suffered from "moderate" limitations would not have changed the ALJ's decision because *the ALJ* found Plaintiff suffered "moderate" mental limitations (based on evidence from the relevant period) and concluded as a result that Plaintiff was restricted to unskilled work. Thus, any error with respect to Dr. Baurichter was harmless.

*(2) VA and State Disability Findings*

Plaintiff argues the ALJ failed to properly consider findings by VA and the Missouri Department of Social Services (DSS) that he was disabled. Findings of disability by other governmental agencies are not binding on the Commissioner. 20 C.F.R. § 404.1504. But such evidence "cannot be ignored and must be considered," and the ALJ must "explain the consideration given." SSR 06-03P, 2006 WL 2329939, at *6 (S.S.A.)

The ALJ wrote that she "studied" the VA's determination but did not give it substantial weight because it was based on diagnoses alone, which was not the standard applicable to Social Security claims. Plaintiff contends this discussion was insufficient. Plaintiff cites *Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998). But in contrast to this case, *Morrison* involved VA disability findings that were accompanied by extensive medical findings, and the ALJ in *Morrison* neglected to mention VA's findings altogether. *Morrison* is distinguishable for that reason.

Plaintiff also cites *Rael v. Social Sec. Admin.*, No. 8:07CV432, 2008 WL 4279707, at *15 (D. Neb. Sept. 16, 2008). In *Rael*, the ALJ's only mention of the VA's disability finding was to describe it and state that the VA's standards differed from Social Security's and were non-binding. The court determined reversal was required in part because the ALJ "fail[ed] to provide any reasons for rejecting the VA's disability determination." *Id.*

3

*Rael* is not persuasive. Together, SSR 06-03P and *Morrison* only require the ALJ to consider other agencies' disability decisions and to explain his or her consideration of them, which includes giving reasons if the decisions are rejected. The ALJ did that here. The ALJ's reason for rejecting the VA's disability determination – because it was based solely on impairments (i.e., diagnoses) as opposed to functional limitations caused by those impairments – is a valid reason to reject the VA's determination. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) ("That a claimant has medically-documented impairments does not perforce result in a finding of disability" (citation omitted)).

As for the DSS's disability determination, the ALJ failed to explicitly discuss it, and this was error. But the Court concludes this error was harmless. DSS's decision is conclusory; it simply identifies Plaintiff's impairments, discusses the law applicable to its determination, and finds him disabled. No reasons are given why DSS found Plaintiff's impairments rendered him disabled. Thus, even if the ALJ had explicitly considered DSS's decision, it would not have changed her determination.

*(3) Residual Functional Capacity Determination*

A claimant's RFC is the most a claimant can still do despite limitations caused by impairments. 20 C.F.R. § 404.1545(a)(1). For the relevant period, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), which includes lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Consistent with the light work finding, the ALJ also found Plaintiff capable of walking 6 hours in an 8-hour day, and standing and sitting this same amount of time. Because of a mental impairment, the ALJ limited Plaintiff to unskilled work.

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence in the record as a whole because the ALJ did not include limitations caused by many of his impairments. Much of Plaintiff's argument consists of him identifying his numerous physical diagnoses between 1992 and 1997. But for the RFC assessment,

the question is not what impairments Plaintiff had, but what *limitations* he experienced because of the impairments. See *Stormo*, 377 F.3d at 807.

In general, evidence of limitations must be provided by the claimant, although the responsibility for developing a claimant's complete medical history is the ALJ's. *See* § 404.1545(a)(3). Evidence of limitations can come from many sources, including statements from physicians and descriptions of limitations from the claimant him- or herself. *See id.*

Plaintiff complains the ALJ included no manipulative limitations in her RFC despite his diagnoses of carpal tunnel syndrome, ulnar neuropathy, tennis elbow, and other conditions. But when asked at the hearing why he could not work, Plaintiff did not testify about any manipulative limitations. And his medical records do not include any limitations assigned by his physicians; all they show is that he reported symptoms (pain, numbness, and weakness) in his hands. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011) (internal quotation marks and citations omitted). The ALJ could reasonably conclude from a radiology report and EMG testing in 1993 – which showed only mild problems – that Plaintiff's symptoms were not severe.

Plaintiff next complains the ALJ failed to include in her RFC determination any environmental limitations, such as restrictions on exposure to temperature extremes, dust, or fumes, resulting from his impairments of chronic obstructive airway disease, chronic bronchitis and sinusitis, coronary artery disease with stent placement in 1996, hypertension, and other conditions. Plaintiff also contends the ALJ failed to consider the effect of light work on these impairments. As for evidence of limitations, Plaintiff testified in a vague and conclusory manner that he was "very limited" during the relevant period and "did a lot of laying [sic] down." The ALJ reasonably discounted Plaintiff's testimony in part because, after his stent placement in June 1996, his doctor found in 1998 he "ha[d] done well since then," and his then-complaint of chest pain was

suspected to be "of esophageal or gastric etiology."[2]  In addition, since Plaintiff continued to smoke even after his impairments were diagnosed, the ALJ reasonably could conclude Plaintiff's cardiovascular and respiratory impairments were not so severe to preclude him from work.

Plaintiff also argues the ALJ should have included in the RFC assessment limitations resulting from his impairments of irritable bowel syndrome, inflammatory bowel disorder, and Crohn's disease.  Plaintiff asserts these impairments caused chronic diarrhea, abdominal pain, and nausea.  The Court notes he testified that he left "quite a few" bartending or restaurant jobs because he went to the restroom too frequently, although this does not necessarily reflect any limitations between 1992 and 1997 because Plaintiff stopped working in 1988.  The Court also notes Plaintiff frequently sought medical treatment for bowel problems during the relevant period and reported severe cramping and diarrhea.  But Mark Alex, MD, testified as an independent medical expert (ME) at the hearing, and he stated Plaintiff could do light work.[3]  Plaintiff counters the ME's "general assessment" did not account for many of Plaintiff's impairments, including his bowel disorders.  While true, the ME stated he had reviewed the file before testifying.[4]  Based on this testimony, the ALJ could reasonably conclude the ME believed Plaintiff capable of light work despite the impairments contained in the file, even those the ME did not mention.  And Plaintiff's counsel could have questioned the ME at the hearing whether Plaintiff's bowel problems would change his opinion, but she declined to cross-examine at all.  Substantial evidence in the record as a whole supports the ALJ's RFC assessment without limitations for Plaintiff's bowel impairments.

Next, Plaintiff argues visual limitations should have been included in the RFC calculation.  In support of this argument, Plaintiff asserts he had five surgeries between

---

[2] Plaintiff had complained of chest pain in July 1997 (after his date last insured), and was diagnosed with "possible angina."

[3] Admittedly, the ME stated this was a "guesstimate."  Plaintiff does not argue this "guesstimate" was anything other than the ME's opinion.

[4] The Record is 1,544 pages long.

6

1996 and 2003, and after each surgery he continued to report blurry vision, floaters, a foreign body sensation, flashes of light, and burning and itchiness. But during his hearing, Plaintiff never testified any vision problems stopped him from doing any daily activities. And his medical records do not support visual limitations. They show that on or about May 10, 1995, Robert E. Benedett, MD, found Plaintiff had a minimal cataract in his right eye and vitritis (generally, inflammation) in both eyes, but his vision was 20/40 and 20/20. On September 18, 1996, 6 days before he had cataract surgery, Plaintiff reported "difficulty reading," but no other limitations were noted. After an appointment in October 1996, Plaintiff did not seek treatment from Dr. Benedett for an entire year. When he did return (after his date last insured), his vitritis was "much improved." Based on this evidence, the ALJ had no reason to think Plaintiff's visual impairments prevented him from working during the relevant period.

Lastly, Plaintiff argues the ALJ's RFC determination should have included restrictions on his contact with the general public, coworkers, or supervisors. Plaintiff relies in part on a 1965 Air Force consultation report which noted Plaintiff "ha[d] shown very little ability to cultivate close personal relationships and little ability to tolerate any kind of disorganization or mildly disagreeable situations." He was diagnosed with a passive-dependent personality, dependent type. Plaintiff cites the report in support of his assertion that his personality disorder caused "difficulties interacting with other people."

But after he was discharged from the Air Force, Plaintiff went to college and performed various jobs requiring social contact until the 1980s, including working as a ballroom dance instructor, an assistant manager at a "Jewish camp," and a bartender. Plaintiff received Social Security disability benefits between 1986 and 1992, but he did not testify he stopped working due to an intolerance of social contact; he testified he stopped working after his mother asked him to move back to Missouri and he entered a substance abuse treatment center. And due to the remoteness in time of the Air Force report, it is not very probative of Plaintiff's mental status between 1992 and 1997.

Plaintiff also cites a 1993 psychological evaluation from Kenneth R. MacDonald, PhD, the purpose of which was to determine Plaintiff's eligibility for state assistance.

7

Plaintiff reported to Dr. MacDonald he had "severe mood swings characterized by explosive temper outbursts and depressive reactions that have involved two suicidal attempts." Based on this report, Plaintiff asserts public interaction would have been "difficult if not impossible." Plaintiff also notes Dr. MacDonald's finding that his social judgment skills were weak.

The ALJ was warranted in not including social limitations in her RFC assessment despite Dr. MacDonald's evaluation. The ALJ concluded Plaintiff only "had mild difficulties" in social interaction. The ALJ supported this finding with by noting Plaintiff had no problems interacting with physicians and was not confined to his home for fear of interacting with others. The "severe mood swings" and "explosive temper" notations in Dr. MacDonald's records derived solely from Plaintiff's report, not from any documented behavior. Further, Plaintiff never testified public contact prevented him from working during the relevant period. The ALJ's RFC calculation was adequate without limitations on social interaction.

*(4) Credibility*

Plaintiff contends the ALJ ignored his testimony regarding his physical and mental limitations without good reasons for doing so. The main reason the ALJ discounted Plaintiff's credibility was due to the absence of medical evidence supporting the complaints, which is a good reason. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (stating absence of objective medical evidence is factor relevant to claimant's credibility). Moreover, Plaintiff waited several years before applying for benefits. This is a valid reason to question the accuracy of Plaintiff's statements in part due to the remoteness of the relevant period. Finally, the ALJ noted during the initial hearing that it appeared Plaintiff was "jockeying around" for benefits because he applied for Social Security retirement benefits in April 2007 (the month he turned 62) while his disability claim was pending, and then withdrew that application. Plaintiff makes no argument that these were not appropriate reasons to question his credibility.

Plaintiff's only specific argument is that the ALJ should not have found that his

8

Case 3:10-cv-05090-ODS   Document 13   Filed 11/18/11   Page 8 of 9

motivation to work diminished after his receipt of VA benefits. Plaintiff argues he stopped working because he no longer could, not because he had a financial incentive to stop. But the Eighth Circuit upheld a credibility determination in which an ALJ made a similar finding in *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004). When a person claims they cannot work due to disability, an ALJ can properly question this claim if the evidence shows other reasons the person may not be working. The Court defers to the ALJ's credibility determination.

III. CONCLUSION

The Commissioner's decision is affirmed.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: November 18, 2011    UNITED STATES DISTRICT COURT